# SUPREME COURT OF THE UNITED STATES

## SCENIC AMERICA, INC. *v.* DEPARTMENT OF TRANSPORTATION, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 16–739.   Decided October 16, 2017

The petition for a writ of certiorari is denied.

Statement of JUSTICE GORSUCH, with whom THE CHIEF JUSTICE and JUSTICE ALITO join, respecting the denial of certiorari.

Say an administrative agency contracts with an outside party. Later, the two sides wind up disagreeing over the meaning of an ambiguous term in their agreement. How should courts resolve the dispute? Usually, of course, judges look to the tested and pretty ancient rules of contract construction. For example, we often resolve contractual ambiguities against the party who wrote the agreement, in part on the theory that the drafter might have avoided the dispute by picking clearer terms. Sometimes, too, we consider testimony from the participants or proof about industry custom to help deduce the contested term's meaning. But in relatively recent times some courts have sought to displace familiar rules like these in favor of a new one, suggesting that an administrative agency's interpretation of an ambiguous contractual term should always prevail—at least so long as the agency's interpretation falls within a (generously defined) zone of "reasonableness."

Of course, courts sometimes defer to an agency's interpretations of statutory law under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837,

866 (1984), and its progeny. But whatever one thinks of that practice in statutory interpretation cases, it seems quite another thing to suggest that the doctrine (or something like it) should displace the traditional rules of contract interpretation too.

Indeed, there's a disagreement among the circuits on this very question. The court in this case agreed to defer to an agency's interpretation of a disputed contractual term. But other courts have rejected much the same sort of invitation. See, *e.g., Muratore* v. *Office of Personnel Management*, 222 F. 3d 918, 921 (CA11 2000) (recognizing split); *Koch Gateway Pipeline Co.* v. *FERC*, 136 F. 3d 810, 814, n. 10 (CADC 1998) (same); *Mid-Louisiana Gas Co.* v. *FERC*, 780 F. 2d 1238, 1243 (CA5 1986); *Meadow Green-Wildcat Corp.* v. *Hathaway*, 936 F. 2d 601, 604–605 (CA1 1991) (Breyer, C. J.) (declining to apply *Chevron* deference to "agency's interpretation of a contract that it makes with an outside party").

Whether *Chevron*-type deference warrants a place in the canons of contract interpretation is surely open to dispute. For example, *Chevron* deference is often defended on the ground that statutory ambiguities reflect a kind of implicit decision by Congress to delegate lawmaking power to the agency to handle the problem on its own. But even assuming (without granting) the accuracy and propriety of that much, what's the case for supposing that Congress implicitly delegates to agencies the power to adjudicate their own contractual disputes too? Especially when independent judges in our legal order have traditionally performed just that job? Some defend *Chevron* deference in statutory interpretation cases on the theory that agencies are technical experts in the fields they are charged with regulating. But contracts usually represent compromises between two or more parties. And is it reasonable to suppose that one side to a compromise always has more expert insight into its meaning? Sometimes *Chevron* is

promoted on the premise that agencies have the public interest at heart when interpreting statutory texts. But does that logic extend with equal force to contract disputes where the contending parties are at least usually a little self-interested? See generally Armstrong, *Chevron* Deference and Agency Self-Interest, 13 Cornell J. L. & Pub. Pol'y 203 (2004). And, for that matter, aren't our traditional rules of contract interpretation, at least at some level of generality, themselves all about promoting the public interest?

These are but a few of the questions posed by this case. No doubt good arguments might be presented on both sides. No doubt, too, the questions presented here are important ones. At the same time, this particular case also comes with some rather less significant and considerably more factbound questions. Questions that would, I fear, only complicate our effort to reach the heart of the matter, for these attendant questions include "difficult and close" jurisdictional issues that would have to be settled first. 983 F. Supp. 2d 170, 173 (DDC 2013). In this light, I am persuaded that the proper course is to deny certiorari in this particular case even though the issues lying at its core are surely worthy of consideration in a case burdened with fewer antecedent and factbound questions.